# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| ANTHONY SAUNDERS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Civil Action No. 7:09cv0328 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | )     United States Magistrate Judge |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Anthony Saunders ("Saunders") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits under the Social Security Act (the "Act"). Saunders seeks an award of disability benefits based on impairments related to his low back pain, with a disability onset date of July 1, 2006. An Administrative Law Judge ("ALJ") concluded that Saunders could not return to his past work as a home oxygen service representative, a position that required him to physically move gas cylinders weighing up to 125 pounds, but that he could perform a limited range of sedentary work, sitting for 6 hours in an 8 hour day for one hour intervals, and standing or walking for one hour intervals. The durational component of this work was consistent with the assessment of state agency physicians who reviewed Saunders' medical records, and Saunders' treating doctors opined that he could do sedentary work, sitting or standing no more than one hour at a time. Having reviewed the record, the court concludes that the ALJ's decision is supported by substantial evidence and must be affirmed. Accordingly, defendant's Motion for

Summary Judgment (Dkt. # 10) is **GRANTED**, and plaintiff's Motion for Summary Judgment (Dkt. # 19) is **DENIED**.

I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the RFC,[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 404.1529(a).

## II

On the date of the ALJ's decision, Saunders was 34 years old. Saunders graduated from high school and consistently worked thereafter in a variety of physically demanding jobs. Saunders last worked for three years as a service representative for a home oxygen company, delivering heavy gas cylinders. Saunders first hurt his back in 2005 while working at home and was treated by a chiropractor for over a year. (Administrative Record, hereinafter "R." 27.) In June, 2006, Saunders began to experience pain and numbness in his left leg. (R. 28.) Saunders was initially seen by his primary care physician, Dr. Matthew S. Kaatz, for low back pain on June 23, 2006, and Dr. Kaatz referred him to a neurosurgeon, Dr. James M. Vascik, who first saw Saunders on July 14, 2006. After an initial epidural injection provided no relief, Dr. Vascik performed L4-5 disc surgery on Saunders on August 25, 2006. The surgery relieved Saunders' leg pain, but he continued to experience tightness, spasm and pain in his low back. Dr. Vascik referred Saunders to physical therapy, which he was not able to complete because he lost his job and health insurance. (R. 333.) On three subsequent occasions, Dr. Vascik wrote that he was hopeful that Saunders could return to work following completion of a physical therapy program. (R. 330, 332-33.) For example, on January 4, 2007, Dr. Vascik wrote: "it is my impression that this man will be employable if he can participate in an aggressive physical therapy program. At this point, he is not employable, and unless he gets therapy, he is not employable for the foreseeable future, and certainly not in the next 12 months." (R. 330.) Saunders' primary care physician, Dr. Kaatz completed a number of disability forms for Saunders, stating that he had treated Saunders for "a herniated lumbar disk which has resulted in permanent nerve damage and chronic pain," rendering him "totally and permanently disabled." (R. 341.)

4

Saunders' application for benefits was denied by the Commissioner initially based on a medical records review by Dr. Frank Johnson on November 2, 2006 (R. 44, 284-90), and on reconsideration based on a medical records review by Dr. Richard Surrusco on January 9, 2007 (R. 45, 293-99). Each of these physicians completed their review of Saunders' medical records after his back surgery. Dr. Johnson noted in his initial determination that Saunders' surgery "has resulted in significant improvement of his symptoms." (R. 289.) On reconsideration, Dr. Surrusco noted that Saunders "is recovering from spinal surgery. And while his current condition appears to be serious, there should be significant improvement within 12 months." (R. 298.) Both Drs. Johnson and Surrusco determined that Saunders could sit for six hours or stand and walk for six hours in an eight hour workday. (R. 285, 294.)

An administrative hearing was convened before an ALJ on September 26, 2007. (R. 21.) In determining whether Saunders was disabled under the Act, the ALJ found that he was severely impaired by his status post lumbar surgery and lumbar degenerative disc disease. (R. 13.) Nevertheless, the ALJ concluded that these impairments were not totally disabling, and that Saunders retained the RFC to perform a limited range of sedentary work, sitting for 6 hours in an 8 hour workday in one hour intervals, or standing or walking for one hour intervals. (R.16.) The ALJ found that Saunders could not return to work at the heavy exertional level of his past relevant work, but concluded at step five that there were a significant number of jobs in the national economy that a person with his impairments could perform, rendering him not disabled. (R. 18-20.)

Saunders sought review by the Appeals Council, which denied his request for review on June 8, 2009. This appeal was filed in federal court on July 31, 2009. The parties filed cross

motions for summary judgment motion, and oral argument on the motions was held on September 23, 2010.

### III

Saunders first complained of low back pain to Dr. Kaatz on June 23, 2006. Saunders reported that he hurt his back working at home in April, 2005 and was seen by a chiropractor over the next year. (R. 258, 338.) Chiropractic treatment provided some initial relief, but Saunders' back pain worsened by mid-2006. (R. 258.) Dr. Kaatz ordered an MRI, which showed small central disc extrusion at L4-5 and L5-S1. (R. 221.) Saunders was referred to Dr. Vascik, who examined Saunders and determined to try an epidural steroid injection and physical therapy. (R. 233-34.) The injection did not alleviate Saunders' "significant pain down the left leg," and Dr. Vascik ordered a lumbar myelogram. (R. 231.) The myelogram showed "a definite L4-5 disc rupture that is pressing on his exiting nerve root," (R. 263), and disc surgery followed on August 25, 2006. Shortly after the surgery, Saunders reported that a great deal of the left leg pain was gone and was pleased with his progress. Saunders sought Dr. Vascik's advice about getting back to work. (R. 252.) Dr. Vascik recommended a course of physical therapy to harden Saunders' back, which he was not able to complete because he subsequently lost his job and health insurance. (R. 336, 333.) During visits to Dr. Vascik over the ensuing months, Saunders reported that while his leg pain was gone, his back pain remained. (R. 333.) Objectively, on October 19, 2006, Dr. Vascik noted moderate paraspinous muscle spasm, but no definite weakness and negative straight leg raising.[2] (R. 333.)

---

[2] The straight-leg raising test is used to evaluate for sciatic nerve compression and is positive if pain radiates past the knee; a positive test indicates possible lumbar disc herniation or sciatic nerve impingement. Mosier and Kohara, Osteopathic Medicine Recall 46 (Wolters Kluwer Health 2007).

6

Over the next several months, Dr. Vascik consistently opined that he thought Saunders could return to work once he completed a course of physical therapy. (R. 330, 332-33.) For example, on January 4, 2007, Dr. Vascik wrote that "[h]e is clearly better than he was before surgery on August 25, 2006, but he is not good enough to go back to work doing heavy manual labor." (R. 330.)

Saunders obtained coverage to allow him to return to physical therapy, and participated in eleven sessions during February and March, 2007. The report from the initial physical therapy evaluation on February 14, 2007 noted objective findings of decreased range of motion of the lumbar spine, normal reflexes and sensation and negative straight leg raising. (R. 314-15.) On palpation, Saunders exhibited severe muscle guarding, tenderness and tightness in the lumbar region. (R. 315.)

On March 15, 2007, Saunders reported to Dr. Vascik that he had not made any progress with physical therapy. (R. 324.) Saunders stated he felt very stiff and expressed concern that his back pain would appear out of the blue. (R. 324.) On this visit, Dr. Vascik noted only "mild paraspinous muscle spasm," and stated that he "was unimpressed with a great deal today." (R. 324.) Dr. Vascik ordered another MRI, and on April 26, 2007 reported that the MRI revealed "some scar tissue along the previous operative site and he has some bulging disk at the lower level 5-1 but neither one explains this man's pain which he clearly tells me today is only along the left side of his incision in his SI joint. There is no leg pain whatsoever. He does not require further surgery." (R. 317.) Dr. Vascik suggested that Saunders be seen by a pain management specialist, but was uncertain whether this was possible given Saunders' financial situation.

On the same day, April 26, 2007, Dr. Vascik completed a two page Medical Evaluation, only one page of which appears in the administrative record. (R. 321.) The first page of the

form, which is missing, asks whether Saunders can work and his diagnosis. (R. 360.) On the second page of the form, which is in the record, Dr. Vascik states that Saunders is limited in his ability to lift objects greater than 10 pounds; bending over, stooping or reaching; sitting for greater than one hour at a time, standing for greater than one hour at a time, climbing four to six steps and driving an automobile. (R. 321.) The administrative record in this case reflects no other treatment by Dr. Vascik.

The record reflects visits to Dr. Kaatz over the next six months and efforts to obtain pain management care for Saunders. On July 20, 2007, Dr. Kaatz wrote that "I have treated many patients with degenerative disk disease and can think of none who has had to endure the amount of pain and disability that Mr. Saunders has. He is totally and permanently disabled and I support him fully in his endeavors to obtain disability." (R. 352.) On September 4, 2007, Dr. Kaatz completed a Medical Evaluation, in which he opined that Saunders was indefinitely unable to work. (R. 360-61.) The second page of the Medical Evaluation noted the same limitations as did Dr. Vascik. (R. 361.)

## IV

Saunders argues that the ALJ erred by failing to employ the proper standard in her evaluation of the opinions of claimant's treating primary care physician, Dr. Kaatz. In general, treating physician's medical opinions are entitled to great deference. See <u>Hines v. Barnhart</u>, 453 F.3d 559, 563 (4th Cir. 2006) (explaining that courts typically "accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant"); 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources"). In fact, in certain circumstances, the opinion of a treating physician is entitled to controlling weight. 20 C.F.R.

§ 404.1527(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). But the opinion of a treating source is not always entitled to great deference or greater weight. Instead, the regulations explain that when an opinion is not given controlling weight, the ALJ will "apply the factors listed [below]…in determining the weight to give the opinion." Id. One of those factors is the length of the treatment relationship. See 20 C.F.R. § 404.1527(d)(2)(i). Other relevant factors include the supportability of the opinion, as determined by the evidence presented by the medical source, and consistency of the opinion with the record as a whole. See 20 C.F.R. § 404.1527(d)(3), (4). For example, contradictory persuasive evidence can discredit a treating physician's opinion. See Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986) ("A treating physician's testimony is ignored *only* if there is persuasive contradictory evidence.") (emphasis in original). Finally, a treating physician's opinion is not given any special deference when the opinion relates to the claimant's ability to work or her RFC. See 20 C.F.R. § 404.1527(e)(2) ("Although we consider opinions from medical sources on issues such as. . . your residual functional capacity. . . the final responsibility for deciding these issues is reserved to the Commissioner.").

In this case, the ALJ found Dr. Kaatz's disability opinion not to be "consistent with objective findings, physical therapy notes, his own suggested limitations, and the limitations recommended by Dr. Vascik, a treating surgeon." (R. 18.) Instead, the ALJ gave "controlling weight to the medical assessment of Dr. Vascik, a treating surgeon," and noted that the RFC she described "is generally consistent with the limitations suggested by Dr. Vascik and Dr. Kaatz." (R. 18.)

9

At the administrative hearing, the ALJ asked the VE to assume the facts set forth in Dr. Kaatz's Medical Evaluation and to state whether there were other jobs Saunders could perform. (R. 39.) The VE questioned whether the hypothetical person reflected in this Medical Evaluation could work an eight hour day, and further noted that "[n]ormally, to do sedentary work, you'd have to be able to sit six hours our of an eight hour day and be productive." (R. 40.) The ALJ responded by asking the VE to assume that the claimant can sit, stand and walk at one hour intervals, totaling eight hours, including sitting for six. (R. 41.) Employing that assumption, the VE identified a number of clerical jobs present in the national economy which the hypothetical person could perform. (R. 41.)

None of the medical sources believe that Saunders could return to the same sort of heavy manual labor he performed previously. All of the medical sources, including Drs. Kaatz and Vascik, agree that he can perform some volume of sedentary work, sitting or standing for one hour at a time. Where the parties disagree is whether there is substantial evidence to support the ALJ's assumption that Saunders can complete a full workday, sitting or standing for one hour intervals.

There are a number of reasons why substantial evidence supports the ALJ's determination that Saunders can perform a full day's worth of sedentary work. First, Drs. Johnson and Surrusco reviewed Saunders' medical records, including those following his surgery, and concluded that he can sit, stand or walk up to six hours in an eight hour workday. Second, while Dr. Vascik wrote letters in October and November, 2006, and January, 2007, stating that Saunders could not return to work without a period of aggressive physical therapy, the context of these letters plainly concerns his prior work doing heavy manual labor. (R. 330, 332, 333.) Each of these letters stated Dr. Vascik's view that Saunders could work if he

completed 6-8 weeks of physical therapy. Third, neither the 2007 physical therapy notes nor the notes from Saunders' last two visits with Dr. Vascik are suggestive of total disability. Indeed, on March 15, 2007, after Saunders had completed three weeks of physical therapy, Dr. Vascik noted only mild paraspinous muscle spasm and stated that he "was unimpressed with a great deal today." (R. 324.) After obtaining a new MRI, Dr. Vascik saw nothing which explained Saunders' pain "only along the left side of his incision in his SI joint. There is no leg pain whatsoever. He does not require further surgery." (R. 317.) The assessments of the state agency physicians and a close reading of Dr. Vascik's treatment records supports the ALJ's RFC determination.

Finally, Saunders contends that his partially favorable administrative decision on a subsequent application suggests that the ALJ's decision in the instant case was unsupported. The court has reviewed the subsequent decision and the parties' briefs on this issue and agrees with the Commissioner that the ALJ's decision to grant benefits as of September 1, 2008 appears to be based on an exacerbation of low back pain with radiculopathy, resulting in at least one additional back surgery. The ALJ, considering the subsequent application, did not grant benefits as of the day after the decision in this case, but rather only granted benefits commencing nearly a year later based on a severe flare up of back pain with radiculopathy. As such, the later award of benefits is not probative as to the time period at issue on this appeal.

V

At the end of the day, it is not the province of the reviewing court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence and, in this case, substantial evidence supports the ALJ's opinion. In affirming the final decision of the Commissioner, the court does not suggest that

Saunders was totally free of all pain and subjective discomfort during the time period at issue. The objective medical record, and particularly the multiple letters from treating neurosurgeon Dr. Vascik and the disability assessments of the state agency physicians, do not support a finding of total disability from all forms of substantial gainful employment. As such, the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is affirmed, defendant's Motion for Summary Judgment (Dkt. # 10) is **GRANTED**, and plaintiff's Motion for Summary Judgment (Dkt. #19) is **DENIED**. An appropriate Order will be entered.

      The Clerk of Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered: October 18, 2010.

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States Magistrate Judge